UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLEVELAND JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:06-CV-1592 (JCH) |
| ) | |
| JAMES PURKETT, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Missouri state prisoner Cleveland Jackson's pro se Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("§ 2254 Pet."), filed October 30, 2006. (Doc. No. 1). The matter is fully briefed and ready for a decision.

On May 8, 1999, a jury in the Circuit Court of the City of St. Louis, Missouri found Petitioner guilty of two counts of First Degree Murder, two counts of Armed Criminal Action, one count of First Degree Robbery, and one count of First Degree Assault. (Resp., Doc. No. 9 Ex. B at pg. 1055-70). On July 1, 1999, the trial court sentenced Petitioner to two terms of life without parole, three terms of thirty years, and one term of fifteen years, all to be served consecutively. (Id. at pg. 1130-34). On April 22, 2000, the Missouri Court of Appeals affirmed Petitioner's conviction. (Id. at Ex. F). On October 11, 2000, Petitioner filed his Rule 29.15 motion for post-conviction relief in the Circuit Court of the City of St. Louis, Missouri, which was denied on May 26, 2005. (Id. at Ex. G, pg. 5, 98). The Missouri Court of Appeals affirmed the Rule 29.15 court's judgment on May 23, 2006. (Id. at Ex. K).

In his § 2254 Petition, filed October 30, 2006, Petitioner raises the following seven grounds for relief:

I. The trial court erred by failing to grant him appropriate relief in response to the State's failure to disclose a letter it received from Enoch Bolden ("Bolden");

II. The trial court erred by not finding that the State committed prosecutorial misconduct by asking the United States Attorney to file a weapons charge against Bolden to convince him to testify;

III. The trial court erred by denying Petitioner's motion to sever his trial from co-defendant Antoine King's ("King") trial;

IV. The trial court erred by limiting Petitioner's ability to cross-examine Adrian McAlister ("McAlister") about her misidentification of co-defendant Christopher Ford ("Ford") in a police lineup;

V. The trial court erred by allowing McAlister to testify that she heard Dennis McAlister state "[d]on't hurt my pregnant wife" before he was murdered;

VI. Petitioner received ineffective assistance of counsel because his trial counsel failed to ask the venire if they would automatically believe the testimony of a witness who received a deal from the State; and

VII. Petitioner received ineffective assistance of counsel because his trial counsel failed to inform the jurors in her opening statement that Bolden was testifying because of a plea deal.

On January 16, 2007, Respondent filed his Response. (Doc. No. 9). Petitioner filed his Traverse on March 15, 2007. (Doc. No. 12).

**DISCUSSION**

A state prisoner may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner is entitled "'to relief on federal habeas corpus only upon proving that [his] detention violates . . . fundamental liberties . . . safeguarded against state action by the Federal Constitution.'" Wessling v. Bennett, 410 F.2d 205, 209 (8th Cir. 1969), quoting Townsend v. Sain, 372 U.S. 293, 312 (1963). "'[I]t is not the province of a federal habeas court to re-examine state-court

determinations [of] state-law questions.'" Gee v. Groose, 110 F.3d 1346, 1349 (8th Cir. 1997), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, a federal court is limited "'to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" Id.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132, 110 Stat. 1214, made numerous changes to Title 28, Chapter 153 of the United States Code, 28 U.S.C. §§ 2241-2255, the chapter governing federal habeas petitions. Specifically, in Section 104 of the AEDPA, Congress added new subsection (d) to 28 U.S.C. § 2254. That subsection provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), a petitioner may prevail if the state court's decision is opposite to that reached by the United States Supreme Court on a question of law or if a state court decides a case differently than the United States Supreme Court despite confronting indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), citing Williams v. Taylor, 529 U.S. 362 (2000) (holding that the "contrary to" clause refers to the Supreme Court's holdings and not its dicta); see also Ramdass v. Angelone, 530 U.S. 156 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a writ may issue only if the state court identifies that correct governing legal principle from the United State Supreme Court's

decisions but unreasonably applies the principle to the facts of the petitioner's case. See Williams, 529 U.S. at 412. Under this clause, a federal habeas court should ask "whether the state court's application of clearly established federal law [as determined by the United States Supreme Court] was objectively unreasonable." Id. at 1521. It is not enough for the federal habeas court to conclude in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 1522.

### **Exhaustion**

A petitioner must exhaust his state law remedies before the federal court can address the merits of his claims in a habeas petition. 28 U.S.C. §2254(b). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Id. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.), cert. denied, 515 U.S. 1163 (1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Every habeas ground advanced by the petitioner must survive this exhaustion analysis, or the petition must be dismissed. Rose v. Lundy, 455 U.S. 509 (1982).

The record demonstrates that Petitioner's claims are exhausted either because they have been properly raised in the state courts, or because Petitioner has no available non-futile state remedies by which he could present his claims.[1]

Claim I

Petitioner alleges that trial court erred by not sanctioning the State for failing to disclose exculpatory evidence. (§ 2254 Pet., Doc. No. 1 pg. 8). Specifically, the State failed to disclose the following letter from Bolden it received on April 28, 1998:

> Since I didn't hear from you, I initiated my own assistance which I'm afraid conflicts with yours. I'll be testifying in court that any statements I make will be prejudiced [sic] against defendants because of the mental and physical duress I've incurred from the threats of the state implicating me in the murders when they knew I was innocent, that any prior statements I made I can't recall if they were made before or after the threats by the state, then if I go public to the fact that your so-called witness picked the wrong suspect. Remember the fools actually got mad at me when I told them Cleveland was the one, and not the dude they had at first, that looked like [sic] him. Why all this? I'm tired of being punished for something I didn't do, and since I'm being messed around it's time for other people to feel the affect also!

(Resp., Doc. No. 9 Ex. G at 1124). Petitioner alleges that this letter was evidence of another suspect and poor police investigation. (§ 2254 Pet., Doc. No. 1 at pg. 9). Petitioner believes that the trial court should have punished the State by excluding Bolden's testimony, granting Petitioner a continuance, or declaring a mistrial. (Id. at pg. 8).

Petitioner presented this argument to the Missouri Court of Appeals, which held as follows:

---

[1] Respondent alleges that Claim III is procedurally defaulted because it was not raised in the trial court. A claim not raised at trial but raised on appeal is preserved for federal review so long as the state appellate court did not deny the claim based solely on procedural grounds. See Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006). Additionally, Petitioner must have cited to a particular constitutional provision to fairly present the constitutional issue to the state court. See Abdullah v. Groose, 75 F.3d 408, 411-12 (8th Cir. 1996) (en banc). Here, Petitioner's appellant brief refers to specific constitutional provisions (Resp., Doc. No. 9 at Ex. D), and the Missouri Court of Appeals did not deny Claim III solely on procedural grounds. (Resp., Doc. No. 9 at Ex. F). Thus, Claim III was not procedurally defaulted.

Appellant first argues that the trial court erred in failing to grant either a mistrial or a continuance, or failing to exclude witness Enoch Bolden as a sanction for the State's not disclosing favorable, exculpatory evidence to the defense. The evidence Appellant complains of consists of letters sent to the State by Enoch Bolden. The State does not dispute that the evidence was properly disclosable to the Appellant pursuant to his discovery requests. However, the State argues, and we agree, that Appellant suffered no prejudice from the State's omission.

"If the state suppresses evidence which may be favorable to the defendant upon request, it violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the state." State v. Carter, 939 S.W.2d 556, 557 (Mo.App. W.D. 1997), citing Brady v. Maryland, 373 U.S. 83, 87 ... (1963). "Brady applies where the undisclosed evidence reveals that: (1) the prosecution's case includes perjured testimony; (2) where defense counsel makes a general pretrial request for 'all Brady material' or anything 'exculpatory,' and (3) where defense counsel makes a request for specific evidence." Id., citing United States v. Agurs, 427 U.S. 97, 103-07 ... (1976). Although Appellant claims that there was a Brady violation, the State correctly asserts that there was no Brady violation because this evidence was actually disclosed during the trial. See United States v. Einfeldt, 138 F.3d 373, 377 (8th Cir. 1998). However, the prejudice standard is the same as that of Missouri cases dealing with disclosure violations.

The nondisclosure of exculpatory evidence constitutes a constitutional error "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 ... (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 ... (1984). "A reasonable probability is a probability that is sufficient to undermine the confidence in the outcome." Id. The defendant has the burden of showing that the evidence is both material and exculpatory. State v. Carter, 939 S.W.2d at 558.

Further, when the State fails to make a timely disclosure, the remedy is left to the sound discretion of the trial court. State v. Kinder, 942 S.W.2d 313, 322 (Mo. banc 1991), *cert. denied* 522 U.S. 854 (1997). We will intervene only where an appellant demonstrates that the State's failure to timely disclose resulted in fundamental unfairness. Id.

In the case at bar, Appellant has failed to demonstrate that, had the evidence in question been timely given to the defense, the outcome of his trial would have been different. Appellant's conviction is based on strong evidence, including eyewitness identification and the testimony of his own cousin, to whom he gave the murder weapons after the completion of the crime. Therefore, we find that Appellant suffered no prejudice from the State's failure to timely comply with the discovery request. Point denied.

(Resp., Doc. No. 9 Ex. F at pg. 2-4).

As previously stated, federal courts will only grant a § 2254 petition if the state court decision applied clearly established federal law erroneously, applied federal law unreasonably to the facts of the case, or was based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. 2254(d)(1)-(2). After reviewing the record, the Court finds that the Missouri Court of Appeals decision was neither contrary to, nor an unreasonable application of, the clearly established federal law enunciated in Brady and its progeny, nor was it based on an unreasonable determination of the facts.

Additionally, the Court emphasizes that Petitioner cannot show prejudice, which is an element of a Brady claim. To show prejudice, Petitioner must demonstrate that there was a reasonable probability that timely disclosure of this letter would have changed the result of this case. See Reasonover v. Washington, 60 F. Supp. 2d 937, 975-76 (E.D. Mo. 1999). The reasonable probability standard is satisfied when the failure to disclose evidence "undermines confidence in the outcome of the trial." Collier v. Norris, 485 F.3d 415 (8th Cir. 2007) (quoting Kyles v. Whitley, 514 U.S. 419, 434) (1995)). Here, the jury knew that McAlister, the witness referred to in the letter, failed to pick out Ford in a line-up. (Resp., Doc. No. 9 at Ex. A pg. 2079-81). Thus, no prejudice could have occurred because the jury was aware of this issue. See Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (explaining, in context of ineffective assistance of counsel claim, that a petitioner cannot show prejudice when the court informs him of a fact, even if his counsel failed to tell him). At most, the letter shows that the police did not have the right suspects before they arrested Petitioner and his co-defendants. This fact does not undermine confidence in Petitioner's conviction. As the Missouri Court of Appeals pointed out, his "conviction is based on strong evidence." (Resp., Doc. No. 9 Ex F at pg. 4). Claim I is denied.

Claim II

Petitioner alleges that prosecutorial misconduct occurred when the State asked the United States Attorney to file a weapons charge against Bolden to convince him to testify. Petitioner alleges that because the State cannot intimidate or coerce a defense witness into silence, the State cannot convince a witness to testify using coercion or intimidation.

Petitioner presented this argument to the Missouri Court of Appeals, which held:

> Appellant next argues that the trial court erred in failing to exclude Enoch Bolden as a witness in the trial as a sanction for prosecutorial misconduct after the State allegedly persuaded the United States Attorney to file a federal weapons charge against Enoch Bolden in order to coerce him to testify.
>
> Assuming Appellant's theory that otherwise valid charges brought against Enoch Bolden by the United States Attorney were filed solely for the purpose of coercing his testimony, there is no precedential support for his position that such action is reversible error. Appellant has not cited, nor have we found, any precedent to support the proposition that the State and/or United States Attorney cannot bring valid charges against a witness in order to coerce the witness to testify in the trial of another defendant. The cases cited by Appellant in support of his position are cases in which the government attempted to coerce a witness *not* to testify, which is clearly improper as a matter of law. See, e.g., United States v. Blackwell, 694 F.2d 1325, 1334 (D.C. Cir. 1982); State v. Brown, 543 S.W.2d 56, 58-59 (Mo.App. 1976) and State v. Allen, 800 S.W.2d 82, 86-87 (Mo.App. W.D. 1992). Point Denied.

(Resp., Doc. No. 9 Ex. F at pg 4-5).

After reviewing the record, the Court finds that the Missouri Court of Appeals decision was neither contrary to, nor an unreasonable application of, clearly established federal law. In the context of federal criminal trials, courts allow the government to apply "lawful pressure" on a witness to convince him that he must testify truthfully. See United States v. Copple, 827 F.2d 1182, 1190 (8th Cir. 1987) (holding that the government's threat of criminal prosecution to witnesses if they did not testify did not prejudice defendants because there was no evidence that witnesses lied, defendants had the opportunity to cross-examine them, and the jury knew of the coercive circumstances); United States v. Howard, 6 F.3d 1241, 1257 (7th Cir. 1993) (discussing threat of perjury charges to induce

truthful testimony); see also United States v. Banks, 942 F.2d 1576, 1579 (11th Cir. 1991) (approving of prosecutor convincing witness to testify by using promise of immunity). Here, it appears that the United States Attorney, at the behest of the State, helped convince Bolden to testify truthfully by using "lawful pressure." Claim II is denied.

Claim III

Petitioner alleges that the trial court erred by not severing his trial from that of King because the State presented evidence that King and the victim Dennis McAlister had a "heated disagreement" a month before his murder. (§ 2254 Pet., Doc. No. 1 at pg. 11). The Missouri Court of Appeals held that severance was not required because the trial court gave the jury a limiting instruction "charging them to consider each defendant's guilt separately, and only on the evidence and the law applicable to him." (Resp., Doc. No. 9 Ex. F. at pg. 5-6).

Mixed questions of law and fact, such as whether a Petitioner's due process rights were violated when he was not granted a severance, are subject to independent review in a habeas proceeding. Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1998). To obtain habeas relief for failure to sever, Petitioner must show that "the failure to grant severance rendered the trial 'fundamentally unfair.'" Wharton-El v. Nix, 38 F.3d 372, 374 (8th Cir. 1994) (quoting Hollins v. Dep't of Corr., 969 F.2d 606, 608 (8th Cir. 1992)). Severance is only required when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Jenner v. Class, 79 F.3d 736, 741, 742 (8th Cir. 1996) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). Absent evidence to the contrary, the Court presumes that the jury is able to compartmentalize the evidence brought against each defendant. Jenner, 79 F.3d at 742. As such, a court may cure the risk of prejudice by providing proper

instructions to the jury because "juries are presumed to follow their instructions. Zafiro, 506 U.S. at 541 (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Here, the Court finds that the jury was still able to make a reliable judgment about Petitioner's guilt even though the trial was not severed. The State presented witnesses that placed Petitioner at the scene before, during, and after the murders. (Resp., Doc. No. 9 Ex. A at pg. 2452-71, 2509-14, 2270-80). Bolden testified that Petitioner gave him guns to hide that were later identified as the murder weapons. (Id. at pg, 2335-37, 2619-2753). Additionally, the Court instructed the jury that it must give separate consideration to each defendant and that evidence admitted against only one defendant cannot be used against the other. (Id. at Ex. B, pg. 947). Thus, Claim III is denied.

Claim IV

Petitioner contends that the trial court erred by limiting his ability to cross-examine McAlister regarding her misidentification of Ford in a police line-up. Petitioner claims that this limitation prejudiced him because it prevented him from impeaching McAlister's ability to identify him. The Missouri Court of Appeals held that Petitioner did not suffer any prejudice because Detective Cliff Harper testified that McAlister misidentified Ford and Petitioner's counsel referenced Ford's misidentification in her closing argument. (Resp., Doc. No. 9 Ex. F at pg. 6; Id. at Ex. A. pg. 2379-81, 3052-53).

The scope of cross-examination is question of state law that does not warrant habeas relief unless Petitioner can show that a specific constitutional provision was violated or that his trial was fundamentally unfair. Pickens v. Lockhart, 4 F.3d 1446, 1454 (8th Cir. 1993). Additionally, the burden on Petitioner on this point is "much greater than that required on direct appeal and even greater than the showing of plain error." Owsley v. Bowersox, 47 F. Supp. 2d 1195, 1210 (W.D. Mo. 1999) (quoting Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir. 1993)).

As a general rule, the Sixth Amendment guarantees "an opportunity for effective cross-examination, not cross examination that is effective in every way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). The Sixth Amendment is violated if Petitioner shows that "a reasonable jury might have received a significantly different impression of the witness' credibility had defense counsel been permitted to pursue his proposed line of questioning." Harrington v. Iowa, 109 F.3d 1275, 1278 (8th Cir. 1997). If the information comes before the jury, though not in the form desired by the defense, it is unlikely that a constitutional error occurred. Layton v. South Dakota, 918 F.2d 739, 742 (8th Cir. 1990). Finally, even if Petitioner can show that a Confrontation Clause violation occurred, the Court may still deny habeas relief by finding that the error was "harmless beyond a reasonable doubt." Orndorff v. Lockhart, 998 F.2d 1426, 1431 (8th Cir. 1993).

Here, the Court finds that the Missouri Court of Appeal properly denied this argument. The jury knew that McAlister had misidentified Ford, making additional testimony repetitive. Additional cross-examination on this point would not have provided a reasonable juror with a "significantly different impression" of McAlister's credibility. Claim IV is denied.

Claim V

Petitioner claims that the trial court erred by admitting the hearsay statement, "[d]on't hurt my pregnant wife," Dennis McAlister made immediately before his murder. Petitioner claims that this information prejudiced the jury by diverting their attention from the crime at issue, Dennis McAlister's murder, to the murder of a pregnant woman. The Missouri Court of Appeals, reviewing the claim under a plain error standard, found that the overwhelming evidence of guilt precluded any finding of a miscarriage of justice.

Generally, the admissibility of evidence is an issue of state law that does not fall within the purview of federal habeas review. The admission of evidence at a state trial can form the basis of federal habeas relief when an "evidentiary ruling infringes upon a specific constitutional right or is so conspicuously prejudicial that it amounts to a denial of due process." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). Additionally, the burden on Petitioner on this point is "much greater than that required on direct appeal and even greater than the showing of plain error." Owsley v. Bowersox, 47 F. Supp. 2d 1195, 1210 (W.D. Mo. 1999) (quoting Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir. 1993)).

Upon consideration, the admission of this evidence was not so prejudicial that it amounted to a denial of due process. Petitioner cannot show that this statement made his trial fundamentally unfair because there was overwhelming evidence of his guilt. Furthermore, the relevance of this evidence, compared with that linking him to the murder weapons and the scene of the crime, contradicts his claim of fundamental unfairness. See Kinder v. Bowersox, 272 F.3d 532, 547-48 (8th Cir. 2001) (holding that inference from allegedly improper evidence was so slight that it did not affect the outcome).

Claim VI-VII

Petitioner alleges that he received ineffective assistance of counsel because his counsel failed to question the venire about whether they would automatically believe a witness who received a deal in exchange for testimony and failed to discuss Bolden's plea deal in the opening statement. (§ 2254 Pet., Doc. No 1. at pg 13-14). Petitioner alleges that had his counsel brought up Bolden's plea deal earlier, the jury would have disbelieved Bolden's testimony.

The Missouri Court of Appeals held:

> Here, we cannot say the motion court's findings of facts and conclusions of law are clearly erroneous. Movant's trial counsel testified that she had a customary

> practice of questioning jurors during *voir dire* when a witness at the trial has made a deal with the State. In this case, however, she testified that there was no certainty that the witness would testify. Trial counsel testified that she felt, based on her experience, questions should not be asked in *voir dire* or comments made in opening statements about matters that may not occur in the trial. Trial counsel further testified that in opening statement, she chose not to mention a witness who might not testify. Moreover, once the witness has testified, Movant's trial counsel more than adequately explored the witness's credibility. Cross-examination covers 99 pages of transcript, 22 of those are used exploring the details of witness' arrangements with the State and Federal governments in exchange for his testimony. Movant has failed to overcome the presumption that his trial counsel's decisions were based on sound trial strategy.
>
> The motion court did not err in denying Movant's claim of ineffective assistance of counsel and the motion court's findings of fact and conclusions of law are not clearly erroneous. Both points are denied.

(Resp., Doc. No. 9 Ex. K at pg. 3).

In order to demonstrate ineffective assistance of counsel, Petitioner must show (1) his counsel's performance was deficient, in that his representation fell below an objective standard of reasonableness; and (2) that such deficient performance prejudiced Petitioner, in that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 , 688, 694(1984). The Missouri Court of Appeals applied this standard. (Resp., Doc. No. 9 Ex. K at pg. 2). Upon consideration, the Court finds that the state court's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. Claims VI and VII are denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 119 S. Ct. 89 (1998).

Dated this 18th day of June, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE